IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAJUANA THOMPSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIONS BEHAVIORAL HEALTH | : | |
| SERVICES, INC., ET AL. | : | NO. 18-58 |

## MEMORANDUM

**Padova, J.**                                                                                  **April 16, 2018**

  Plaintiff Majuana Thompson filed a Collective and Class Action Complaint against Defendants Progressions Behavioral Health Services, Inc. ("Progressions Health") and Progressions Companies, Inc. ("Progressions Co."), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.101 et seq., and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. Ann. § 260.1 et seq.  Defendants have moved to dismiss certain aspects of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1]  For the following reasons, we grant Defendants' Motion in part and deny it in part.

**I.     BACKGROUND**

  The Complaint alleges that Defendants hired Plaintiff on February 24, 2012, to work as a School Based Outpatient Therapist at Muhlenberg Middle School. (Compl. ¶ 40.) Plaintiff initially worked part-time, about twenty-five to thirty hours per week. (Id. ¶ 43.) In early 2013, Plaintiff began working for Defendants as a "Mobile Therapist" in addition to her role as a School

---

[1] Although Defendants state that they are moving to dismiss the entire Complaint, they make no argument for dismissal of the PMWA claim against Progressive Health, and we interpret their argument for dismissal of the FLSA claim as only addressing a portion of that claim. Accordingly, we conclude that they are only moving to dismiss certain portions of the Complaint.

Based Outpatient Therapist at the Middle School.  (Id. ¶¶ 44-45.)  Defendants permitted her to work only ten to fourteen hours per week as a Mobile Therapist in order to prevent her from exceeding forty hours per week of work in the two position combined.  (Id. ¶ 47.)  Plaintiff continued working in the two positions simultaneously for approximately one year, until the beginning of 2014.  (Id. ¶ 48.)

In her capacity as an Outpatient Therapist, Plaintiff was initially classified as an independent contractor, rather than an employee.  (Id. ¶ 56.)  Defendants therefore considered her to be exempt from the overtime requirements of the FLSA and PMWA, and, as a result, did not pay her any overtime compensation for time that she worked over forty hours in any given week. (Id.  ¶ 58.)  During the school year (September to June), Plaintiff generally worked five days per week, from 7:30 a.m. until 3:45 p.m. at the school, and also worked for at least two hours after school, filling out paperwork, completing reports, and entering information into Defendants' client management software.  (Id. ¶ 60-62.)  In addition, she worked approximately two hours each weekend, completing notes and weekly time sheets.  (Id. ¶ 63-64.)  Thus, in a typical workweek, Plaintiff did, on average, thirty-five to thirty-eight hours of "billable" work, as well as ten to twelve hours of work considered to be "non-billable," e.g., completing paperwork, submitting reports, and communicating with clients by phone and email.  (Id. ¶ 65.)  Pursuant to Defendants' policies, Plaintiff was only allowed to submit to Defendants a maximum of forty hours of compensable, "billable" time each week.  (Id. ¶ 66.)  In addition, in spite of a provision in Defendants' Employee Handbook stating that full-time employees are entitled to both paid time off and holiday pay, and the handbook's definition of a full-time employee as anyone who consistently and regularly works at least thirty hours per week, Plaintiff was not given paid time off or holiday pay.  (Id. ¶¶ 84, 86-87.)

Between July 2014 and April 2016, Defendants reclassified all of their Outpatient

Therapists, including Plaintiff, as employees. (Id. ¶ 57.) From the time of Plaintiff's reclassification until May 2017, Defendants continued to compensate Plaintiff on an hourly basis only for work that they deemed billable, and they provided no mechanism for Plaintiff to seek compensation for the work that they deemed non-billable. (Id. ¶ 67.) In addition, in spite of the reclassification, Defendants did not provide Plaintiff with overtime compensation at 1.5 times her rate of pay for the billable work that she performed over forty hours per week; rather, they compensated her for overtime hours at her usual hourly rate. (Id. ¶ 68.)

Plaintiff filed the instant action on January 8, 2018. The Complaint contains three Counts. Count I asserts a claims under the FLSA, based on Defendants' failure to pay Plaintiff overtime at 1.5 times her regular rate of pay both when she was misclassified as an independent contractor and after, when she was classified as a full-time employee. Count II asserts a claim pursuant to the PMWA, based on Defendants' failure to pay overtime and to pay Plaintiff for all hours worked. Count III asserts a claim under the WPCL, based on Defendants' failure to pay Plaintiff overtime, and to provide her with paid time off and holiday pay.

## II.  LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss,

3

134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

Defendants have moved to dismiss Plaintiff's Complaint, arguing that it fails to plausibly allege (1) a timely claim under the FLSA based on a theory that she was misclassified as an independent contractor and, thus, unlawfully denied overtime pay during that period; (2) that Progressions Co. is a joint employer with Progressions Health, such that Progressions Co. can be liable on any of Plaintiff's claims, and (3) that Plaintiff and Defendants were parties to a contract that could give rise to Plaintiff's WPCL claim.

A.     FLSA

Defendants argue that the Complaint fails to state an FLSA claim upon which relief can be granted insofar as it concerns the time period in which Plaintiff was denied compensation while allegedly misclassified as an independent contractor.  They reason that the Complaint fails to allege the precise date on which Plaintiff was reclassified from independent contractor to employee and, thus, fails to allege facts that give rise to the inference that Plaintiff has asserted a timely FLSA claim concerning her pay during her period of misclassification under the FLSA's three-year statute of limitations.

The FLSA requires employers to pay employees no less than the federally mandated minimum wage for all hours worked up to and including 40 hours per week, and also requires employers to pay time and one-half for all hours worked over 40 in a given workweek.  See 29 U.S.C. §§ 206, 207.  An employer must pay employees for all of the hours they were permitted to work, even if the employer did not require or request the employee to work all of those hours.  See 29 C.F.R. § 785.11 (stating that "[w]ork not requested but suffered or permitted is work time").  This rule applies to "work performed away from the premises or the job site, or even at home.  If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked."  29 C.F.R. § 785.12.  Independent contractors, however, are not considered FLSA employees and, thus, are not covered by the FLSA.  Leffler v. Creative Health Servs., Inc., Civ. A. No. 16-1443, 2017 WL 4347610, at *3 (E.D. Pa. Sept. 29, 2017) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 728-29 (1947); Bamgbose v. Delta-T Group, Inc., 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010)).

A plaintiff pursuing a claim for unpaid overtime compensation under the FLSA must ordinarily bring that claim within two years of its accrual.  29 U.S.C. § 255(a).  Where, however, the claim alleges a "willful violation," the claim may be commenced within three years of its

accrual.  Id.  To plead a willful violation, a plaintiff must allege facts demonstrating that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1988).

Here, we read Plaintiff's FLSA claim as having two components.  First, it asserts that Defendants violated the FLSA by denying Plaintiff overtime during a time period in which she was classified as an independent contractor.  (Compl. ¶ 96.)  Specifically, it asserts that Defendants misclassified Plaintiff as an independent contractor during that time period and then used her independent contractor status as the justification for finding that she was not entitled to the FLSA's overtime protections.  (Compl. ¶¶ 58-59.)  Second, it asserts that Defendants violated the FLSA by denying Plaintiff overtime during the subsequent time period in which she was classified as an employee of Defendants.  (Compl. ¶¶ 97-98.)  Specifically, it asserts that Defendants violated the FLSA during that time period by failing to pay Plaintiff overtime for "billable" hours over 40 hours, as well as hours they deemed "non-billable," which should have qualified as overtime hours.  (Compl. ¶¶ 67-68.)  Plaintiff's claims in these two respects are similar, but nevertheless distinct, as the claim concerning the earlier time period rests on an essential factual premise that Plaintiff was, in fact, misclassified as an independent contractor and, thus, was entitled to the FLSA's protections.

The Complaint does not allege the precise date on which Plaintiff was reclassified from independent contractor to employee; rather, it alleges only generally that Defendants reclassified all of its independent contractors as employees on a rolling basis between July 2014 and April 2016. (Compl. ¶ 57.)  However, the Complaint also alleges facts that make clear that Plaintiff had been reclassified as an employee no later than December 6, 2014.  (See Compl. ¶¶ 68-69 (describing the period of December 6, 2014 to December 16, 2014 as a period, post-reclassification, when Plaintiff was denied overtime pay); Pl.'s Mem. in Opp. to Mot. to

Dismiss at 5 ("A careful reading of the Complaint reveals that Plaintiff's reclassification as an employee . . . occurred no later than December 6, 2014.").) Accordingly, we read the Complaint to allege that Defendants had remedied Plaintiff's alleged misclassification no later than December 6, 2014. Plaintiff filed the Complaint in this case on January 8, 2018, more than three years after Plaintiff had been reclassified. Thus, even assuming *arguendo* that the Complaint alleges a willful violation of the FLSA and is therefore subject to the extended three-year statute of limitations for willful violations, we conclude that Plaintiff's FLSA claim, insofar as it is based on her misclassification, is barred by the statute of limitations. In other words, Plaintiff is time-barred from claiming that she was entitled to the FLSA's protections during the time that she was classified as independent contractor. Consequently, we grant Defendants' Motion to the extent that it seeks dismissal of that aspect of the FLSA claim that seeks overtime compensation for the time period in which Plaintiff was allegedly misclassified as an independent contractor, and we dismiss that aspect of the claim as untimely. We do not, however, dismiss the remainder of Plaintiff's FLSA claim, which is based on Defendants' failure to pay Plaintiff overtime wages following her reclassification as an employee of the company, as her claim in that regard clearly falls within the FLSA and its three-year statute of limitations.

    B.. <u>Joint Employer Liability</u>

Defendants also argue that we should dismiss all claims against Progressions Co. because Plaintiff rests her claims against Progressions Co. on the theory that it is a joint employer with her actual employer, Progressions Health, but the Complaint does not plausibly allege the joint employment relationship.

"[A] joint employment relationship may exist when 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'"

Myers v. Garfield & Johnson Enters., Inc., 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010) (quoting NLRB v. Browning–Ferris Indus. of Pa., 691 F.2d 1117, 1123 (3d Cir. 1982)). Thus, "a joint employer relationship may exist . . . when 'two entities exercise significant control over the same employees.'" Id. (quoting Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997)). In determining whether there is a "joint employer" relationship, such that two different companies can both be held liable for the same alleged misconduct, courts look to the following factors:

> (1) [A]uthority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) day-to-day supervision of employees, including employee discipline; and (3) control of employee records, including payroll, insurance, taxes and the like.

Id. at 607-08 (alteration in original) (quoting Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 494 (W.D. Pa. 2007)). "No single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two." Id. at 608 (citing Butterbaugh, 479 F. Supp. 2d at 496–97).

Here, the Complaint alleges that Progressions Health and Progressions Co. "are a joint, single, and/or integrated employer" with respect to the employees of Progressions Health. (Compl. ¶ 11.) In support of this assertion, it alleges that the two companies:

> share employees (including, but not limited to providers of behavioral health services as well as administrative staff), office space (including, but not limited to the same registered corporate address and treatment locations), equipment, management (including, upon information and belief, shared corporate officers such as Director of Human Resources and President), and collectively assert control over their employees for purposes of hiring, firing, discipline, assigning, directing, and setting and enforcing payroll and other administrative policies.

Id. In addition, the Complaint alleges that Progression Co.'s Employee Handbook "was and is distributed to all employees of [Progressions Health]." (Id. ¶ 12.)

Based on these allegations, we conclude that the Complaint plausibly alleges a joint employer relationship between Progressions Co. and Progressions Health. We therefore deny

8

Defendants' Motion insofar as it seeks dismissal of the claims against Progressions Co. based on an argument that the Complaint fails to allege facts to support the assertion of a joint employer relationship.

    C.    <u>WPCL</u>

Defendants argue that we should dismiss Plaintiff's WPCL claim because the Complaint fails to plausibly allege that they and Plaintiff were parties to an employment contract, much less an employment contract that obligated them to pay Plaintiff overtime, holiday pay, and paid time off.

The WPCL does not establish any substantive rights; it simply provides a statutory remedy for an employee "when the employer breaches a contractual obligation to pay earned wages." <u>Weldon v. Kraft, Inc.</u>, 896 F.2d 793, 801 (3d Cir. 1990); <u>Rosario v. First Student Mgmt., LLC</u>, 247 F. Supp. 3d 560, 568 (E.D. Pa. 2017). Thus, "[t]he contract between the parties governs in determining whether specific wages are earned." <u>Weldon</u>. 896 F.2d at 801. The WPCL defines the term "wages" to "[i]nclude[] all earnings of an employe[e]," which "includes fringe benefits or wage supplements." 43 Pa. Stat. Ann. § 260.2a. The term "[f]ringe benefits or wage supplements" is defined to encompass "separation, vacation, holiday, or guaranteed pay . . . and any other amount to be paid pursuant to an agreement to the employe[e]." <u>Id.</u>

Here, the Complaint alleges that "Plaintiff . . . and Defendants entered into an agreement that all full-time employees of Defendants would be entitled to receive [paid time off and holiday pay]," and "that all non-exempt, hourly employees . . . would be paid their regular rate for all regular hours that they work, and paid time and one-half for any overtime hours they work over forty (40) in a week." (Compl. ¶¶ 84-85, 90; <u>see also</u> <u>id.</u> ¶¶ 109, 111.) The Complaint refers to the Employee Handbook (the "Handbook"), and alleges that the Handbook reflects that full-time employees are entitled to these same wages and benefits. (<u>Id.</u> ¶¶ 84, 89.)

Defendants argue that these "threadbare" references to an agreement fail to identify any actual contract between Plaintiff and Defendants. (Defs.' Mot. at 5.) They further argue that an employee handbook can only constitute a contract if it does not contain a "disclaimer announcing that the handbook is not intended as a contract" and point out that the Complaint does not allege that the Handbook is missing such a disclaimer. Bosler v. Bio-Medical Applications of Pa., Civ A. No. 14-1530, 2015 WL 479914, *3 (E.D. Pa. Feb. 4, 2015) (citing Rutherfoord v. Presbyterian Univ. Hosp., 612 A.2d 500, 504 (Pa. Super. Ct. 1992)).

To state a claim for breach of contract under Pennsylvania law, a complaint must allege: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015) (quoting Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)). The Complaint alleges that the parties entered into an agreement that was memorialized in the Handbook and required Defendants to pay Plaintiff overtime wages, holiday pay, and paid time off. (Compl. ¶¶ 84-85, 89-90.) It further alleges that Defendants breached that agreement by failing to pay Plaintiff overtime wages, holiday pay and paid time off, and that Plaintiff was therefore denied pay to which she was entitled. (See id. ¶¶ 87-88, 90-91.) We therefore conclude that the Complaint alleges the existence of a contractual breach for which a claim can be asserted under the WPCL. While Defendants argue that the Complaint does not state a plausible WPCL claim, because it does not allege whether or not the Handbook contains a disclaimer announcing that the Handbook is not a contract, we conclude that the lack of this allegation – in the face of no assertion that the Handbook actually contains such a disclaimer[2] – does not render the

---

[2] Because Plaintiff's WPCL claim is based on the Employee Handbook, we could consider the Handbook in connection with the Motion to Dismiss. Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196). However, neither party has submitted the Handbook in

10

WPCL claim implausible. We therefore deny Defendants' Motion to Dismiss insofar as it seeks dismissal of the WPCL claim.

## IV. CONCLUSION

For the foregoing reasons, we grant in part and deny in part Defendants' Motion to Dismiss. Specifically, we grant the Motion with respect to the portion of the FLSA claim that concerns the time period in which Plaintiff was classified as an independent contractor, and we deny the Motion in all other respects.[3] An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.

---

connection with Defendants' Motion. Accordingly, we simply accept the Complaint's allegations as true with regard to the Handbook's contents.

[3] Plaintiff requests that we grant her leave to amend her Complaint to give her the opportunity to cure any deficiencies that we identify in her pleading. However, it is plain that her FLSA claim concerning the time in which she was allegedly misclassified as an independent contractor is barred by the statute of limitations, and she asserts no factual or legal bases pursuant to which we could conclude otherwise. Accordingly, we conclude that any amendment would be futile, and we deny her request to amend her Complaint for that reason. See Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) (stating that "[d]ismissal without leave to amend is justified . . . on the grounds of . . . futility" (citation omitted)).

11